UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| CLINTON E. GRAY | CIVIL ACTION NO. 07-0402 |
|---|---|
| -vs- | JUDGE DRELL |
| UNITED STATES OF AMERICA, et al. | MAGISTRATE JUDGE KIRK |

## RULING

Before the Court is a motion for summary judgment filed by defendant United States of America (Doc. 14). Because no genuine issues of material fact remain, and because the United States is entitled to judgment as a matter of law, the motion must be GRANTED, and the plaintiff's claims must be DISMISSED WITH PREJUDICE.

### BACKGROUND AND FACTS

On or about March 21, 2005 at approximately 8:15 p.m., the plaintiff, Clinton E. Gray ("Gray") and two companions were frog hunting while boating on Bayou Cocodrie in Concordia Parish, Louisiana. While proceeding southbound, Mr. Gray approached a split in the waterway. Mr. Gray decided to head onto Wild Cow Bayou on the left (East) of the split, toward a bridge-like structure. Unbeknownst to him, and apparently unmarked, a weir was located near the bridge. The current propelled the boat over the weir, the engine died, and the vessel and its occupants were pulled underwater and trapped against the weir. The boat and most of its material contents were lost to the

bayou, but Mr. Gray and his companions survived. Mr. Gray does not claim that he was physically injured in the accident.

Mr. Gray filed an administrative claim on or about March 16, 2006 with the United States Army Corps of Engineers ("the Corps"), Vicksburg District, which claim was denied. He then filed the instant suit on March 5, 2007 against the United States of America through the Corps and, in the alternative, against the State of Louisiana, all relating to the maintenance and operation of the weir on which the accident occurred—the weir on the <u>left</u> side of the split on Bayou Cocodrie (hereinafter simply "the left weir"), leading onto Wild Cow Bayou.

Mr. Gray claims that after the accident he discovered a warning sign located on the <u>right</u> side of the split but that the sign was not visible at the time of the accident. That sign marked the right (South) weir and read, "DANGER [/] UNDERWATER OBSTRUCTION 200 FEET [/] NO BOATING BEYOND THIS POINT." In any event, he claims that "there were no visible signs present that warned Plaintiff or the other occupants of the vessel as to the weir's location on the left side of the split heading into Wild Cow Bayou." (Doc. 1, p. 4). Consequently, Mr. Gray claims

> that the accident described above and resulting injuries were . . . directly proximately caused by the negligence and/or fault of the defendants . . . , which negligence and fault are listed more particularly, but not exclusively, as follows:
>
>     a.    Maintaining extremely dangerous conditions at the weir site, and
>
>     b.    Failing to warn the public against the dangerous conditions created by the weir structure located on Wild Cow Bayou.

(Doc. 1, p. 4).

On August 28, 2007, we granted the State of Louisiana's unopposed motion to dismiss for lack of subject matter jurisdiction, dismissing Mr. Gray's claims against the State of Louisiana without prejudice. That same day, the United States, now the only remaining defendant (with its agency, the Corps), filed the motion for summary judgment (Doc. 14) now before us. In support of its motion, the United States contends (and presents evidence) that although the Corps "owns and maintains weirs elsewhere on Bayou Cocodrie," the weir in question—the left weir—was owned and maintained by the State of Louisiana. (Doc. 14-2, p. 2; Doc. 14-7). Thus, it contends, there is no basis to impose liability on the United States.

In opposition to the motion, Mr. Gray points to a statute imposing a duty on the Corps to inspect dams; a Corps manual relating to the placing of signs around locks, dams, and waterways; the fact that no warning sign was visible on the left side of the split; the fact that Mr. Gray's father saw a Corps employee inspecting both weirs; and the fact that the Corps were "inspecting, maintaining and operating the dam controlling water levels of the weir structure located on a navigable waterway known as Wild Cow Bayou . . . ." (Doc. 20-2, pp. 1-2; Doc. 20). We address these contentions below.

## JURISDICTION

First, we must address subject matter jurisdiction. By letter dated February 20, 2007, the Corps informed Mr. Gray that it was denying his administrative claim after processing it under the Army Maritime Claim Settlement Act, 10 U.S.C. § 4801, "as it fell under the maritime jurisdiction of the United States." (Doc. 1, p. 7). However, the letter also stated that "it appears that your claim falls within the Federal Tort Claims Act,

rather than the Suits in Admiralty Act[,] . . . based on the premise that the waterway in question is not navigable to commercial vessels, but only to recreational watercraft." (Id.). Thus, the letter is ambiguous as to the source of jurisdiction, but not as to whether jurisdiction exists. The letter further explained the deadlines for filing suit, depending on whether the claim properly fell under the Suits in Admiralty Act ("SAA")[1] or under the Federal Tort Claims Act ("FTCA").[2] (Id.).

In any event, Mr. Gray filed the instant suit on March 5, 2007, within two years after the March 21, 2005 incident, so under either the SAA's strict statute of limitation[3] or the FTCA's looser statute of limitation,[4] the suit was timely. Furthermore, we have jurisdiction whether the SAA or the FTCA applies in this case, and because the central issue (i.e., whether the Corps owned or maintained the left weir) remains the same in either event, we need not decide which scheme applies. It is enough to say that we have subject matter jurisdiction over the claims presented by Mr. Gray and, by extension, the motion for summary judgment before us.[5]

---

[1] 46 U.S.C. § 30901-30918.

[2] 28 U.S.C. § 1346(b); 28 U.S.C. § 2671-2680.

[3] The SAA requires the filing of suit within two years after the date of incident and does not allow tolling for the filing of an administrative claim. See 46 U.S.C. § 30905.

[4] The FTCA requires the filing of an administrative claim within two years after the date of the incident, provides indefinite tolling while the administrative claim is being decided, and then requires suit within six months after the administrative claim is denied. See 28 U.S.C. § 2401.

[5] We note that both Mr. Gray and the United States seem to believe that the SAA applies in this case.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment

> should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Id. A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2510-11 (1986). If the movant produces evidence tending to show there is no genuine issue of material fact, the nonmovant must then direct the Court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 321-23, 106 S. Ct. 2548, 2552 (1986)). In the analysis, all inferences are drawn in the light most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient to defeat a motion for summary judgment. Brock v. Chevron U.S.A., Inc., 976 F.2d 969, 970 (5th Cir. 1992). Finally, "a mere scintilla [of evidence] is not enough to defeat a motion for summary judgment." Davis v. Chevron U.S.A., Inc., 14 F.3d 1082, 1086 (5th Cir. 1994) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)).

## ANALYSIS

The basis for Mr. Gray's suit in this case is the failure to maintain and post warnings relating to the left weir. Generally speaking, both the SAA and the FTCA waive sovereign immunity for suits against the United States only if the plaintiff could

recover against a private entity on the same basis.[6] Mr. Gray has cited no relevant authority—and we can find none—that would impose liability on a private entity relating to the left weir <u>if that private entity did not own, operate, or maintain the weir</u>. Accordingly, the central issue in the case is whether the United States, through the Corps, owned, operated, or maintained the left weir. Mr. Gray argues that a statute, a Corps sign manual, and miscellaneous other facts give rise to liability for the United States. As this ruling explains, those arguments are unavailing on their own terms, in light of the fundamentally undisputed evidence that the United States neither owned, operated, nor maintained the left weir.

In support of its motion for summary judgment, the United States attaches the signed statement of Joseph McFarland, Civil Engineering Technician for the Vidalia Area Office of the U.S. Army Corps of Engineers, verified under penalty of perjury pursuant to 28 U.S.C. § 1746. Mr. McFarland, after reviewing the relevant evidence, concluded:

> Mr. Gray's illustrated description of his route down Bayou Cocodrie and the weir over which he drove his boat clearly identify the weir as one owned and maintained by an agency of the State of Louisiana.
>
> The Army Corps of Engineers owns and maintains weirs elsewhere on Bayou Cocodrie, but the only weir in the area that runs beneath a bridge-like structure is the State of Louisiana's.
>
> Moreover, I have reviewed the hydrographic data for March 21, 2005 and there was so little water in the vicinity of any of the Corps of Engineers' weirs that any boat approaching one of them would have allided with the weir and not floated over it.
>
> The warning sign depicted in the photographs provided by Mr. Gray is maintained by the Corps of Engineers to warn of one of its weirs, not the State of Louisiana's weir over which Mr. Gray drove his boat.

---

[6] See 46 U.S.C. § 30903 (SAA); 28 U.S.C. § 1346(b)(1) (FTCA).

(Doc. 14-7, p. 2).

The United States included these conclusions (with slightly different wording) in its statement of uncontested facts pursuant to LR 56.1. The corresponding rule applicable to the nonmovant, LR56.2, provides in full:

> Each copy of the papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule.

Id. Mr. Gray's statement of genuine issues of material fact pursuant to LR56.2 states only two issues:

1.

> Plaintiff and the other occupants of the vessel were heading down Wild Cow Bayou on the left side of the split of the two waterways. At the time of the accident, there were no visible warning signs present that warned Plaintiff and the other occupants of the vessel as to the weir's location on the left side of the split in the waterways heading onto Wild Cow Bayou. After the accident, Plaintiff was apprised of a warning sign that was located on the right side of the split. However, that sign was not visible to affiant at the time of the accident. (Affidavit of Clinton E. Gray, Exhibit A).

2.

> The United States of American and its Army Corps of Engineers were inspecting, maintaining and operating the dam controlling water levels of the weir structure located on a navigable waterway known as Wild Cow Bayou, in Concordia Parish, State of Louisiana (An affidavit of Doug Gray, Exhibit B). See 33 USCA § 467(a).

(Doc. 20-2, pp. 1-2). Under LR56.2, the statement of uncontested facts submitted by the United States are deemed admitted, for purposes of the motion, except to the extent controverted by Mr. Gray's own statement of genuine issues of material fact. Mr. Gray's

first statement simply contains information in the complaint, and we accept it as true for purposes of this motion.

The second statement, however, has a few problems. First, the second statement does not concern the left weir, but rather a "dam controlling water levels on the weir structure" allegedly inspected, maintained, and operated by the United States. (Doc. 20-2, pp. 1-2). Mr. Gray's cause of action arises from negligence relating to the left weir and for failure to warn of the dangers; accordingly, the fact that the United States may operate other dams or weirs on Bayou Cocodrie or otherwise regulate the amount of water in the waterway is irrelevant to this cause of action. Moreover, the United States admits in its own statement under LR56.1 that it operates other weirs on Bayou Cocodrie. Thus, this is not a disputed fact.

The second problem with the second issue is that it cites as record support the affidavit of Mr. Gray's father, Doug Gray, but that affidavit contains no information relating to "the dam controlling the water levels of the weir structure" (Doc. 20-2, p. 1); rather, after Mr. Doug Gray affirms that he is the father of the plaintiff, the entirety of the affidavit reads: "After the accident, Doug Gray went to the area of the accident, witnessed an employee of the Army Corps of Engineers inspecting the weirs." (Doc. 20-7).[7]

Taken as true and in the light _most favorable_ to Mr. Gray, Mr. Doug Gray's statement means only that a Corps employee was present on the weirs (presumably the

---

[7] The statute cited in this second statement, 33 U.S.C. § 367(a), is discussed below. Suffice it to say that it cannot and does not impose liability on the United States through the Corps. Moreover, it says nothing about the United States's operation of a specific dam on Bayou Cocodrie, which would affect the left weir in question.

8

left weir and the right weir) after the accident, performing some kind of inspection. However, in light of the fundamentally undisputed evidence that the State of Louisiana—<u>not</u> the United States through the Corps—owned, operated, and maintained the left weir, the presence of a Corps employee is no more than a scintilla of evidence in the plaintiff's favor. Mr. Gray has produced no evidence that the United States owned, operated, or maintained the <u>left</u> weir. Thus, the net effect of the statement of the United States under LR56.1 and the opposing statement by Mr. Gray under LR56.2 is to establish that the State of Louisiana owned, maintained, and operated the left weir.

The fact of ownership, maintenance, and operation is crucial because the basis of Mr. Gray's suit is negligence relating to the operation and maintenance of the left weir, including failure to warn of the danger. As noted above, we can find no case or statute imposing liability on a non-owner/-operator of a weir (or dam, or any other structure, for that matter) for the negligent operation, maintenance, or failure to warn of the structure. Mr. Gray attempts to impose liability through a few other means, but these theories are inapposite to this situation.

First, Mr. Gray cites 33 U.S.C. § 467a, which reads in relevant part:

(a) In general

> As soon as practicable, the Secretary of the Army, acting through the Chief of Engineers, shall carry out a national program of inspection of dams for the purpose of protecting human life and property. All dams in the United States shall be inspected by the Secretary except . . . .

<u>Id.</u> Mr. Gray asserts that this statute, in conjunction with Doug Gray's witnessing a Corps employee inspecting both weirs after the accident and the fact that the Corps had

some responsibility over "the pumping plant which is <u>south of the weirs</u> to maintain the level of the water at the weirs[,] . . . clearly shows the Corps is operating and maintaining the Upper Weir (the involved [sic] in this accident and the other structures.)" (Doc. 20, p. 4) (emphasis added).

That conclusion is incorrect for several reasons. First, although 33 U.S.C. § 467a does establish "a national program of inspection of dams for the purpose of protecting human life and property," the statute says nothing about imposing liability on the Corps in connection with this duty. However, 33 C.F.R. § 222.6 ("National Program for Inspection of Non-Federal Dams"), part of 33 U.S.C. § 467a's regulations, makes clear that liability remains firmly with the owner and operator of the dam:

> (g) Program Execution--
>
> > (1) Responsibilities.
> >
> > > (i) **The owner has the basic legal responsibility for potential hazards created by their dam(s).** Phase II studies, as described in Chapter 4, Appendix D, and remedial actions are the owner's responsibility.
> > >
> > > (ii) **The State has the basic responsibility for the protection of the life and property of its citizens.** Once a dam has been determined to be unsafe, it is the State's responsibility to see that timely remedial actions are taken.
> > >
> > > (iii) The Corps of Engineers has the responsibility for executing the national program. **The Federal program for inspection of dams does not modify the basic responsibilities of the States or dam owners**.
> > > . . .

<u>Id.</u> (emphasis added).

10

Thus, the statute does not attempt to waive sovereign immunity in any way. Even if it did, "[s]tatutes waiving sovereign immunity of the United States are to be 'construed strictly in favor of the sovereign.'" Jeanmarie v. U.S., 242 F.3d 600, 604 (5th Cir. 2001) (citing McMahon v. U.S., 342 U.S. 25, (1951)). Because 33 U.S.C. § 467a contains no language establishing a broader waiver than is already found in the SAA, the statute cannot create liability for the United States relating to a weir which the United States did not own, operate, or maintain. Second, Doug Gray's statement that he saw a Corps employee "inspecting the weirs" (Doc. 20-7) (evidently including the left weir) means only that; nowhere does Mr. Gray actually contend that the Corps owned, operated, or maintained the left weir, only that a Corps employee inspected it after the accident. Construed in the light most favorable to Mr. Gray, this fact does not affect the undisputed fact that the United States did not own, operate, or maintain the left weir.[8]

Third, Mr. Gray's reliance on information pertaining to the Corps's involvement with a pumping plant or dam somewhere south of the left weir has no relevance (or at least, Mr. Gray fails to explain any relevance) to the only issue in this case—whether the owner or operator of the left weir, apparently the State of Louisiana, was negligent either in its operation or maintenance of the weir or in failing to post warnings. Thus, those arguments raise neither a genuine issue of material fact nor a point of law that is favorable to Mr. Gray.

---

[8] Indeed, though we do not reach this determination here, the Corps's post-accident inspection could conceivably have been required as part of the national dam inspection program, which, as already noted, cannot give rise to liability for the United States.

Mr. Gray's final argument is that the Corps's National Sign Program, which is memorialized in the Corps's Sign Standards Manual ("Manual"), required the Corps to place warning and information signs around the left weir, <u>even if</u> it was owned not by the Corps but by the State of Louisiana. Mr. Gray asserts that <u>Bagner v. U.S.</u>, 428 F.Supp.2d 101 (N.D.N.Y. 2006), and <u>McMellon v. U.S.</u>, 395 F.Supp.2d 422 (S.D.W.Va. 2005) establish that the Corps has such a duty to warn pursuant to the Manual. However, in <u>Bagner</u>, the Corps maintained and operated the lock and dam in question. <u>Bagner</u>, 428 F.supp.2d at 103. The <u>Bagner</u> court introduced the Corps's Sign Standards Manual as follows:

> **As part of its duty in maintaining and operating the Troy Lock and Dam**, the Corps is charged with warning mariners of dangers associated with the lock and dam. To facilitate uniformity and provide guidance regarding warning signs, the National Corps of Engineers developed a National Sign Program, which set forth its policies on "sign design, placement and use, management, maintenance, and economic considerations." These policies are expressed in the Corps' Sign Standards Manual ("Manual"), which established standard guidelines for the use of signs that communicated information to the public. Each Corps field office must be in compliance with the Manual.

<u>Bagner</u>, 428 F.Supp.2d at 104 (citation omitted) (emphasis added).

Likewise, in <u>McMellon</u>, the dam in question was owned by the United States and operated by the Corps, and in any event the court only briefly mentioned the Manual. <u>McMellon</u>, 395 F.Supp.2d at 425, 430. Thus, although both courts discussed the Manual and the Corps's National Sign Program, it was in connection with a structure owned, operated, or maintained by the United States or, specifically, the Corps. These cases—and the Manual itself—are inapposite to the instant situation, where neither the Corps nor any other agency of the United States owned, operated, or maintained the left

weir. Although Mr. Gray asserts that the Manual applies to this case because of the national dam inspection program established in 33 U.S.C. § 467a, this ruling has already explained that the ultimate legal responsibility rests with the dam owner under that statute and its associated regulations.

In conclusion, based on the fundamentally undisputed facts regarding the left weir, and the fact that Mr. Gray has presented no more than a scintilla of evidence in response to those facts, it is clear that the United States did not own, operate, or maintain the left weir. Mr. Gray fails to cite applicable authority, and we can find none, that would impose liability <u>under any theory</u> on the United States for the negligent maintenance and/or failure to warn of a weir which it neither owned, operated, nor maintained. Because Mr. Gray has presented no genuine issue of material fact which would preclude summary judgment and no viable legal theory which would allow recovery against the United States in this case, the United States is entitled to judgment as a matter of law.

## CONCLUSION

Based on the foregoing, the motion for summary judgment (Doc. 14) filed by defendant United States is GRANTED. By separate order, all of the plaintiff's claims in this matter are DISMISSED WITH PREJUDICE.

SIGNED on this 24th day of March, 2008 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE